IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **KEVAN FLORES and EVELYN MUNGIA,** As Next Friend of I.M., Minor Child, *Plaintiffs,* <br><br> v. <br><br> **FURNITURE INDUSTRY SERVICE, INC.,** *Defendant.* | § § § § § § § § § § § <br> MO:24-CV-00195-DC-RCG |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Plaintiffs Kevan Flores and Evelyn Mungia's, as next friend of I.M., Minor Child, ("Plaintiffs") Motion for Default Judgment against Defendant Furniture Industry Service, Inc. ("Defendant FIS"). (Doc. 64).[1] This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Plaintiffs' Motion for Default Judgment be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 64).

### I.   BACKGROUND

This is a products liability case that initiated when a bunk bed collapsed, resulting in the injury of two young boys who were asleep in the beds. (Doc. 1 at 17). Defendant FIS is the manufacturer, producer, and designer of the bunk bed. *Id*. at 19. Plaintiffs filed their Original Petition against Defendants Bob Mills Furniture Co. of Texas LP a/k/a Bob Mills Furniture; BMF Texas LP Holdings, LLC; BMF Texas GP Holdings, LLC; Wilshire Furniture Group, LLC; Speedy Delivery, LLC; and Furniture Industry Service, Inc. (collectively, "Defendants") in the 238th District Court, Midland County, Texas, on July 21, 2022. (Doc. 1). Defendants removed

---
1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

this action on September 21, 2022. *Id*. Plaintiffs bring seven causes of action: (1) strict liability, (2) negligence, (3) breach of implied warranty of fitness for a particular purpose, (4) breach of warranty of merchant ability, (5) misrepresentation, (6) deceptive trade practice violations ("DTPA"), and (7) *res ipsa loquitur*. *Id*. at 19–26.

Once removed to federal court, the Court ordered service on two unserved defendants—Speedy Delivery, LLC and Defendant FIS. (Doc. 9). Plaintiffs successfully served Speedy Delivery, LLC, and requested an extension to serve Defendant FIS. (Doc. 21). The Court granted the extension, and summons were issued as to Defendant FIS on April 17, 2023. (Docs. 23, 24). Plaintiffs filed proof that Defendant FIS's CEO, Gustavo Pedroza Esparza, was personally served on May 1, 2023. (Doc. 30). On June 1, 2023, once Defendant FIS's answer deadline passed, the Court issued an Order for Defendant FIS to show cause as to why it was not in default and why Plaintiffs' requested relief should not be granted. (Doc. 31). To date Defendant FIS has failed to answer Plaintiffs' Complaint or otherwise make an appearance in this lawsuit. Thus, Plaintiffs filed a Motion for Clerk's Entry of Default (Doc. 56); the Clerk of the Court entered default against Defendant FIS on June 17, 2024 (Doc. 57). Subsequently, Plaintiffs filed an unopposed Motion to Sever their claims against Defendant FIS, so they may pursue a default judgment against Defendant FIS, while continuing to litigate their case against all other Defendants. (Doc. 59). The Court granted this Motion. (Docs. 60, 62). Then, on October 25, 2024, Plaintiffs filed the instant Motion for Default Judgment, requesting the Court hold an evidentiary hearing after the original case is finalized. (Doc. 64).

By a supplemental submission to the Motion for Default Judgment, Plaintiff seeks an award of $500,000 in favor of Plaintiff Kevan Flores and $60,000 in favor of Plaintiff I.M.

against Defendant FIS.[2] An evidentiary hearing was held on June 17, 2025. (Doc. 67). Accordingly, this matter is now ready for disposition.

## II. LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. FED. R. CIV. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts considers whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, courts assesses the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to relief. *See 1998 Freightliner*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default,

---

2. Plaintiffs' do not provide in their Motion, nor did they provide at the hearing, that they are seeking attorney fees. Plaintiffs do make a conclusory request for "costs and interest" in their Motion. (Doc. 64 at 3).

3

the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Third, courts determines what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III.  DISCUSSION

Applying the three-part analysis detailed above, the Court finds Plaintiffs are entitled to a default judgment, in part, against Defendant FIS.

### A. Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds default judgment is procedurally warranted. First, Defendant FIS has not filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defendant FIS's total failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiffs' interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the past nearly three years Defendant FIS has not responded to the summons and complaint, the Court's Show Cause Order, the entry of default, or Plaintiffs' Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating Defendant FIS's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendant FIS has had nearly three years to respond to Plaintiffs' claims or otherwise appear in this matter. Consequently, any purported harshness of a default judgment is mitigated by Defendant FIS's inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. 17-CV-071, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendant FIS. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds default judgment is procedurally warranted under these circumstances.

## B. Default Judgment is Substantively Warranted

Due to the entry of default, Defendant FIS is deemed to have admitted the allegations outlined in Plaintiffs' Original Petition. *See Nishimatsu Constru.*, 515 F.2d at 1206. Even so, the Court must review the pleadings to determine whether Plaintiffs plead a sufficient basis for their claims to relief. *See id.* The Fifth Circuit looks to case law on Federal Rule of Civil Procedure 8 to guide this analysis:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.* Plaintiffs bring seven causes of action: (1) strict liability, (2) negligence,

5

(3) breach of implied warranty of fitness for a particular purpose, (4) breach of warranty of merchant ability, (5) misrepresentation, (6) DTPA violations, and (7) *res ipsa loquitur*. (Doc. 1 at 19–26). As this Court sits in diversity, it applies Texas law to determine the sufficiency of the Complaint.

Before looking at Plaintiffs' specific causes of action, the Court notes most of the allegations in the Original Petition are highly generalized and not clearly directed at any particular defendant. When looking at the allegations and causes of action, in only one instance do Plaintiffs refer to Defendant FIS by name and state Defendant FIS is the manufacturer, producer, and designer of the bunk beds. (Doc. 1 at 19). From that, the Court is willing to infer when Plaintiffs refer to the "designer" or "manufacturer" they are referring to Defendant FIS; however, this again can only be found in a few places within the Complaint. *Id*. at 18–19, 22–24, 26. "General allegations lumping all defendants together and failing to identify specific actions of individual defendants will not suffice to raise an inference of plausible liability against any individual defendant." *Callier v. Nat'l United Grp., LLC*, No. 21-CV-71, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021); *Hunsinger v. 204S6TH LLC*, No. 21-CV-2847, 2022 WL 1110354, at *7 (N.D. Tex. Mar. 23, 2022) (denying a motion for default against a defendant because the plaintiff failed to plead adequate facts linking the specific defendant with the alleged misconduct). Further, Plaintiffs should not be surprised the Court finds many of their claims to be insufficient against Defendant FIS as they provide in their Petition, "Plaintiffs cannot more specifically allege the acts of negligent manufacture, design, or assembly on the part of defendants, because facts in that regard are peculiarly within the knowledge of that defendant." (Doc. 1 at 26).

i. **Strict Liability**

In Texas, a plaintiff must allege: "(1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user." *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 741 (N.D. Tex. 2016) (quoting *Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984)); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334–35 (Tex. 1998). Plaintiffs allege the bunk beds manufactured, produced, and designed by Defendant FIS were defective. (Doc. 1 at 19–20). They allege the product was unreasonably dangerous because, without an additional piece that was sold separately, the beds could not maintain their structural integrity. *Id*. Plaintiffs allege "the furniture was intended to and did reach Plaintiffs without change in its condition in which it was sold, distributed and assembled." *Id*. at 20. Finally, Plaintiffs allege the condition of the bunk beds was the producing cause of the injury. *Id*. Thus, Plaintiffs pled sufficient facts to prevail on their strict products liability claim.

    **ii.**    **Negligence and *Res Ipsa Loquitur***

Under Texas law, a plaintiff seeking to prove negligence must establish: (1) a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). Here, Plaintiff's negligence claim necessarily fails because Plaintiffs do not allege any duty Defendant FIS had, let alone that it breached. Instead, Plaintiffs provide highly generalized and conclusory allegations and do not attribute any facts to the manufacturer, producer, or designer of the bunk beds. (Doc. 1 at 21–22). Accordingly, Plaintiffs cannot recover on their negligence cause of action alone.

However, as an alternative theory, Plaintiffs rely on the doctrine of *res ipsa loquitur*. (Doc. 1 at 26). While *res ipsa loquitur* is not a separate cause of action from negligence as

7

Plaintiffs have plead it, it is a rule of evidence by which negligence may be inferred. *Pearson v. BP Prods. N. Am., Inc.*, 449 F. App'x 389, 391 (5th Cir. 2011) (citing *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982)); *Lowe v. Firestone Tire & Rubber Co.*, No. 16-CV-3067, 2018 WL 3803921, at *3 (N.D. Tex. July 9, 2018). "The purpose of *res ipsa loquitur* is to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *Bellamy v. Ford Motor Co.*, No. 22-CV-00941, 2025 WL 35885, at *7 (W.D. Tex. Jan. 6, 2025). The doctrine "is applicable only when: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to be under the management and control of the defendant." *Montfort Square Shopping Ctr., Lyd v. Goodyear Tire & Rubber Co.*, No. 10-CV-1673, 2012 WL 2358163, at *11 (N.D. Tex. June 21, 2012). Plaintiffs have pleaded that the occurrence giving rise to this litigation is such that would not have happened in the absence of negligence, the design and manufacture of the bunk beds was within the exclusive control of defendant—which the Court will presume to be Defendant FIS—and this negligence was the proximate cause of the injuries and damages sustained by Plaintiffs. (Doc. 1 at 26). Thus, Plaintiffs can prevail on their negligence claim via the doctrine of *res ipsa loquitur*.

    **iii.   Breach of Implied Warranty of Fitness for a Particular Purpose**

An implied warranty of fitness for a particular purpose is created under Texas law when the seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." TEX. BUS. & COM. CODE § 2.315 (Vernon 1994); *Two Rivers Co. v. Curtiss Breeding Serv.*,

8

624 F.2d 1242, 1251–52 (5th Cir. 1980). "The particular purpose must differ from the ordinary use; a warranty for the ordinary use is covered under the warranty of merchantability in section 2.314." *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 365 (Tex. App.—Corpus Christi 1994, no writ) (citing TEX. BUS. & COM. CODE § 2.315 cmt. 2). Here, the Court questions whether Plaintiffs' allegations can be directly attributed to Defendant FIS. Even if they could be, the Court finds Plaintiffs cannot recover because Plaintiffs' use of bunk beds for children to sleep in is not a particular non-ordinary purpose. In fact, it is the exact, ordinary purpose. *See Helen of Troy, L.P. v. Zotos Corp.*, 511 F. Supp. 2d 703, 720 (W.D. Tex. 2006) ("The Court does not find that using an eight-ounce bottle to hold four ounces of liquid is "a specific use by the buyer which is peculiar to the nature of his business."). Therefore, the Court concludes Plaintiffs failed to plead sufficient facts to prevail on their implied warranty of fitness for a particular purpose claim.

      **iv.   Breach of Warranty of Merchantability**

To prevail on an action for breach of implied warranty of merchantability, a plaintiff must prove (1) the merchant sold goods to the plaintiff; (2) the goods were unmerchantable, that is, unfit for ordinary purposes; (3) the plaintiff notified the defendant of the breach; and (4) the plaintiff suffered injury. *Hartford v. Lyndon–DFS Warranty Servs., Inc.*, No. 01-08-00398, 2010 WL 2220443, *11 (Tex. App.—Houston [1st Dist.] 2010, no pet,) (first citing TEX. BUS. & COM. CODE § 2.314 cmt. 3; then citing *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667–68 (Tex. 1999)). Moreover, § 2.314(b) requires the goods be defective, meaning "unfit for ordinary purposes for which they are used because of a lack of something necessary for adequacy," at the time they left the manufacturer and seller's possession. *See GMC v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998). "Under Texas law, a manufacturer of a product may be held

9

liable to the ultimate purchaser of that product for economic loss which results from the manufacturer's breach of the implied warranty of merchantability of § 2.314, without regard to privity of contract between the parties." *Clark v. DeLaval Separator Corp.*, 639 F.2d 1320, 1322 (5th Cir. 1981) (citing *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex. 1977)).

Reading the Petition in the light *most* favorable to Plaintiffs, they alleged the bunk beds were sold to Plaintiffs, the bunk beds were not fit for the ordinary purpose of sleeping, Plaintiffs notified Defendants of the breach, and Plaintiffs were injured. (Doc. 1 at 23). While Plaintiffs do not specifically mention Defendant FIS—but rather refer only to Defendants collectively—the Court finds Plaintiffs' pleading sufficient as to this claim because Defendants from the manufacturer down to the retailer could be liable under this cause of action. *See Clark*, 639 F.2d at 1323.

    **v.   Misrepresentation**

Plaintiffs appear to bring claims for "fraudulent, negligent, or innocent misrepresentations of material fact." (Doc. 1 at 24). To state a claim for common law fraud under Texas law, a plaintiff must allege the defendant made (1) a material misrepresentation (2) that was false, (3) which, at the time it was made, the defendant either knew was false or made it recklessly without knowledge of its truth, (4) with the intent that it be relied upon, (5) that the misrepresentation was actually and justifiably relied and acted upon by the plaintiff, and (6) that the plaintiff suffered injury. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 388 F. Supp. 2d 780, 784 (S.D. Tex. 2005) (citing *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929–30 (Tex. 1996)). Further, fraud claims require a heightened pleading standard in federal court. *See Edge Adhesives, Inc. v. Sharpe Concepts, LLC*, No. 15-CV-405, 2015 WL 12743618, at *3 (N.D. Tex. Aug. 31, 2015) (denying a motion for default judgment on its fraud claim for

not pleading with the requisite specificity). Without requiring heightened pleading, a claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005).

Plaintiffs are unable to recover against Defendant FIS on a misrepresentation claim, whether fraudulent, negligent, or innocent. This is because Plaintiffs do not plead a single allegation directed at Defendant FIS, indicating Defendant FIS made a misrepresentation.

    **vi.   DTPA Violations**

"The elements of a DTPA cause of action are that (1) the plaintiff is a consumer; (2) the defendant committed a wrongful act by engaging in a false, misleading, or deceptive act that is enumerated in a subdivision of the Texas Business and Commerce Code, section 17.46(b), or breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) the act was a producing cause of the plaintiff's damages." *Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. 17-CV-808, 2020 WL 10502725, at *9 (W.D. Tex. Aug. 11, 2020) (citing *Henning v. One West Bank FSB*, 405 S.W.3d 950, 968 (Tex. App.—Dallas 2013, no pet.)). Plaintiffs Original Petition does nothing more than recite the elements of a DTPA claim as it applies to "defendants." (Doc. 1 at 24–25). Plaintiffs do list three specific "false, misleading, or deceptive acts or practices"; however, they state "the defendant" committed such acts with no way to infer which defendant is being referenced. *Id*. at 25; TEX.

BUS. & COM. CODE § 17.46(b). With five defendants listed in the Petition, the Court cannot impute these actions onto Defendant FIS. Thus, Plaintiffs cannot recover on their DTPA claim.

### C. Plaintiffs' Right to Relief

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On June 17, 2025, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing covering the issue of damages. (*See* Doc. 67). At the hearing, counsel stated Plaintiffs were only seeking damages for past and future pain and suffering, as well as past and future mental anguish damages.[3] Counsel also proffered testimony on behalf of Plaintiffs. Additionally, Plaintiff submitted an affidavit from Plaintiff Kevan Flores to support his damages award. (Doc. 66 at 3–4). In their affidavit, Plaintiffs' request an award of $500,000 in favor of Plaintiff Kevan Flores and $60,000 in favor of Plaintiff I.M. (Doc. 66 at 1).

Non-economic damages include compensation for pain, suffering, mental anguish, disfigurement, and physical impairment. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003). The factfinder is given broad discretion in determining such damages. *Palafox v. Zamudio*, No. 22-CV-73, 2023 WL 5173765, at *7 (S.D. Tex. June 12, 2023). A plaintiff can show past pain and suffering through testimony or circumstantial evidence of physical pain. *Sw. Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951–52 (Tex. App.—San Antonio 1997, no writ). "Evidence of continuing pain may support an award for pain and suffering in the future." *Flynn v. Racicot*, No. 09-11-00607-CV, 2013 WL 476756, at *6 (Tex. App.—Beaumont 2013, no pet.).

---

3. It is unclear whether Plaintiffs are still pursuing an award of "costs and interest" as is mentioned in their Motion for Default Judgment. (Doc. 64 at 3). To the extent they are, the Court was not provided any evidence or briefing to even begin awarding such damages.

"Mental anguish is defined as intense pain of body or mind or a high degree of mental suffering." *Hicks v. Ricardo*, 834 S.W.2d 587, 590 (Tex. App.—Houston [1st Dist.] 1992, no writ.). Texas authorizes damages for mental anguish in virtually all physical injury actions. *City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997). However, even when an occurrence is of the type for which mental anguish damages are recoverable, the plaintiff must present (1) "direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption to daily life"; or (2) "other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *SunBridge Healthcare Corp. v. Penny*, 160 S.W.2d 230, 251 (Tex. App.—Texarkana 2005, no pet.) (citing *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)).

In support of an award of non-economic damages, Plaintiff Kevan Flores submitted an affidavit as to the event and his physical and mental state afterwards. (Doc. 66 at 3). Plaintiff Kevan Flores provides he was 13 years old when the bunk beds collapsed. *Id*. He was asleep on the bottom bunk when his brother, Plaintiff I.M., who was asleep on the top bunk, fell on top of him. *Id*. Following the collapse, Plaintiff Kevan Flores spent months figuring out the source of his back pain, ultimately being diagnosed with Posttraumatic Syringomyelia. *Id*. He has been to over 50 doctors' appointments for his condition. *Id*. Eventually, the pain in his back prevented him from staying in class; he had to withdraw from school his sophomore year and spend his remaining years being homeschooled. *Id*. Plaintiff Kevan Flores is still experiencing pain and will require treatment for the rest of his life. *Id*. Thus, the Court finds an award of $500,000 to Plaintiff Kevan Flores for pain and suffering and mental anguish appropriate.

At the hearing, Plaintiffs' counsel proffered testimony on behalf of Plaintiff I.M., who was asleep on the top bunk when it collapsed onto his brother below. The testimony provided

that Plaintiff I.M. sustained minor injuries from the event but continues to suffer from nightmares and residual guilt due to his brother's condition. Thus, the Court finds an award of $60,000 to Plaintiff I.M. for pain and suffering and mental anguish appropriate.

## IV.  RECOMMENDATION

For the aforementioned reasons, it is **RECOMMENDED** Plaintiffs' Motion for Default Judgment be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 64). Plaintiffs' Motion should be **GRANTED** as it relates to Plaintiffs' strict liability, negligence via the doctrine of *res ipsa loquitur*, and breach of warranty of merchantability claims. Plaintiffs' Motion should be **DENIED** as it relates to Plaintiffs' breach of implied warranty of fitness for a particular purpose, misrepresentation, and DTPA violation claims. It is also **RECOMMENDED** a final judgment be entered against Defendant FIS as follows:

- $500,000 to Plaintiff Kevan Flores for pain and suffering and mental anguish;
- $60,000 to Plaintiff I.M. for pain and suffering and mental anguish; and
- $0 for costs and interests.

SIGNED this 10th day of July, 2025.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).